UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AFAF MALAK,

        Plaintiff,

v.                                          Case No.  8:23-cv-667-SPF

MARTIN O'MALLEY,
Commissioner of the Social
Security Administration,[1]

        Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 81–89).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 105–09, 111–15).  Plaintiff then requested an administrative hearing (Tr. 116–17).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 38–80).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023, and is substituted as Defendant in this suit under Rule 25(d) of the Federal Rules of Civil Procedure.

not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 14–37). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1969, claimed disability beginning July 15, 2020 (Tr. 82). Plaintiff attended four or more years of college (Tr. 250). Plaintiff's past relevant work experience included work as a financial institution manager (Tr. 30). Plaintiff alleged disability due to pinched nerve in back, pinched nerve in neck, bilateral knee problems, fibromyalgia, sciatic nerve problems, and migraines (Tr. 82).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2025 and had not engaged in substantial gainful activity since July 15, 2020, the alleged onset date (Tr. 19–20). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, degenerative disc disease of the cervical spine, degenerative joint disease of the bilateral knees, chronic headache disorder, fibromyalgia, and seronegative rheumatoid arthritis (Tr. 20). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22). The ALJ then concluded that Plaintiff retained

a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> [S]he requires the option to sit or stand alternatively every 60 minutes for a brief change in position while remaining on task. She can never climb ladders, ropes or scaffolds, kneel or crawl. She can never balance on slippery, uneven, or erratically moving surfaces. She can occasionally climb ramps or stairs, stoop, crouch, operative foot controls bilaterally, or reach overhead bilaterally. She can never be exposed to unprotected heights or operate dangerous machinery. She can tolerate occasional exposure to extreme cold, extreme heat, industrial vibration, environmental pulmonary irritants such as fumes, odors, dusts and gases, and noise level above the average modern office setting (SCO Noise Level 3)

(Tr. 24). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 26).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work as a financial institution manager (Tr. 30). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 32).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

Plaintiff raises three arguments on appeal: (1) the ALJ erred in assessing her RFC because she failed to consider the side effects of Plaintiff's treatments; (2) the ALJ erred in

5

the assessment of Plaintiff's fibromyalgia; and (3) the ALJ erred in evaluating the opinion of Dr. Saifi. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. RFC

First, Plaintiff argues that the ALJ erred in her RFC assessment by failing to consider the effects of Plaintiff's ketamine treatment, epidural steroid injections, and medial branch block. Plaintiff argues that these treatments would require excessive absences and time spent off-task that would be work-preclusive. The Commissioner responds that the ALJ properly assessed Plaintiff's RFC and the number of medical appointments a claimant has should not factor into the ALJ's RFC determination.

A claimant's RFC is the most work she can do despite any limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence. 20 C.F.R. §§ 404.1545(a)(2), (e), 416.945(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). In the end, a claimant's RFC is a formulation reserved for the ALJ, who must support her findings with substantial evidence. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v.*

*Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor").

      Plaintiff explains that, in August 2021, she received nine ketamine infusions (Tr. 699–715). These infusions took place each day on August 16–20 and again on August 23–26. Each infusion lasted four hours, and she was required to maintain an indwelling IV catheter at home between infusions (*Id.*). Plaintiff also had epidural steroid injections on November 5, 2020; December 7, 2020; December 17, 2020; March 15, 2021; and February 7, 2022 (Tr. 542–46, 887). Following these injections, Plaintiff was required to apply ice to the injection site every 2 hours for the following 24–48 hours. Plaintiff then had medial branch blocks on May 4, 2022; July 20, 2022; August 4, 2022; August 8, 2022; and August 11, 2022 (Tr. 1115–22). Plaintiff represents that a person who receives a medial branch block is unable to work on the day of treatment (Doc. 18 at 5), though this is not clear from her medical records. Finally, Plaintiff received another round of ketamine infusions on March 3 and March 4, 2022 (Tr. 889, 891). Given this treatment history, Plaintiff speculates that she would need identical treatments in the future and, as a result, would lose any job because the VE testified that absences in excess of twelve days per year or one day per month were work preclusive (Tr. 77–78).

      In *Cherkaoui v. Commissioner of Social Security*, the Eleventh Circuit was "unpersuaded by [the plaintiff's] argument that the excessive number of medical appointments she attended rendered her disabled." 678 F. App'x 902, 904 (11th Cir. 2017). Specifically, the court held that the question of "whether the number of medical appointments affects [the claimant's] ability to work is not an appropriate consideration

7

for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Id.* The *Cherkaoui* court also noted that "nothing in the record indicates that [the claimant] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work." *Id.*

Similarly, there is nothing in the record here to suggest that Plaintiff's appointments could be scheduled only during working hours. The Court also cannot endorse Plaintiff's speculation about future absences based solely on her past medical appointments. *See Rivero v. Comm'r of Soc. Sec.*, No. 2:16-cv-845-FtM-CM, 2018 WL 1466387, at *6 (M.D. Fla. Mar. 26, 2018) (finding that the claimant's "alleged need to be absent from work at least two and one half days per month is speculation" because that "argument was based on the analysis of her general medical history").

In her Reply, Plaintiff suggests that she is not basing her absenteeism argument on the number of medical appointments she has had, but on the nature of the treatment itself, which is an appropriate consideration for the ALJ in determining her RFC. *See* SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996) ("The RFC assessment must be based on all of the relevant evidence in the case record, such as ... [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."). But here, the ALJ thoroughly summarized the medical evidence of record, which included Plaintiff's ketamine infusions, epidural steroid injections, and medial branch blocks (Tr. 26–29). The

ALJ then found Plaintiff capable of performing sedentary work with additional limitations (Tr. 24–30).

Ultimately, Plaintiff's argument is, in essence, that there is evidence in the record that could support a different RFC determination. This is outside of the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]'....") (alterations in original). The question is not whether there is evidence in the record supporting a finding that Plaintiff has additional non-exertional limitations based on her pain management treatment, but whether the ALJ's finding that Plaintiff can do sedentary work with the non-exertional limitations she assessed is supported by substantial evidence. Here, it is.

### B. Fibromyalgia

Next, Plaintiff argues that the ALJ erred in her assessment of Plaintiff's fibromyalgia. The Commissioner responds that the ALJ properly evaluated Plaintiff's fibromyalgia along with her other impairments in assessing her RFC. The Court agrees.

Fibromyalgia "is 'characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015) (quoting SSR 12-2). The SSA promulgated SSR 12-2p to provide guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how

9

it will evaluate this impairment in a disability claim. SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). The ruling directs ALJs to consider fibromyalgia in the five-step sequential evaluation process and instructs them on how to develop evidence and assess the impairment in determining if it is disabling. When making an RFC determination, SSR 12-2p states, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6. When determining whether a claimant can do any past relevant work or other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to be alert to the possibility that there may be exertional or nonexertional limitations, such as postural or environmental limitations, that may impact the analysis. *Id.* The ruling advises that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms," the SSA will consider all of the record evidence, including the claimant's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms, the nature and frequency of the person's attempts to obtain medical treatment for symptoms, and statements by third parties about the claimant's symptoms. SSR 12-2p, 2012 WL 3104869, at *5.

Of course, a diagnosis of fibromyalgia does not necessarily equate to work-related limitations. *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 988 n.5 (11th Cir. 2015) ("The mere fact that the ALJ determined that Laurey's fibromyalgia was a 'severe impairment,' however, does not mean that the ALJ was required to attribute severe pain

10

to her fibromyalgia."); *Moore*, 405 F.3d at 1213 n.6 (existence of impairments does not reveal extent to which they limit ability to work or undermine ALJ's determination in that regard); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself.").

The ALJ did not dispute Plaintiff's fibromyalgia diagnosis and concluded it was a severe impairment (Tr. 20). However, the ALJ found that, while the Plaintiff's medically determinable impairments (including fibromyalgia) could reasonably be expected to produce the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 26). In making this determination, the ALJ not only considered the objective medical evidence, but also considered all of the evidence in the case record, as required by SSR 12-2p. In particular, the ALJ noted that, while Plaintiff testified that her pain was always bad and she could not leave the house as a result of her pain, this testimony was inconsistent with the plethora of medical evidence showing that Plaintiff's symptoms improved with treatment and Plaintiff's ability to demonstrate adequate performance in physical therapy (Tr. 29, 693, 901, 912, 931-32, 1087, 1095–97, 1099–1100, 1103, 1109, 1111–13, 1115, 1120–21, 1135).

Plaintiff suggests that the ALJ erred in this analysis because she failed to assess "whether the improvements to pain are sufficient enough and last long enough" to allow full-time work. But the ALJ thoroughly reviewed the medical evidence and ultimately concluded that Plaintiff's fibromyalgia did not prevent her from performing the RFC as

assessed. Indeed, the ALJ found that Plaintiff's RFC should be limited to the sedentary exertional level with an allowance for brief position changes hourly (Tr. 24, 30). The ALJ specifically noted that Plaintiff has "significant musculoskeletal impairments" and fibromyalgia, "which would be expected to cause pain, but she is not further limited than assessed herein" (Tr. 30). For these reasons, the Court finds that Plaintiff failed to demonstrate that the ALJ erred in her assessment of Plaintiff's fibromyalgia.

### C. Opinion Evaluation

Finally, Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Ali Saifi, M.D., one of Plaintiff's treating physicians. In particular, Plaintiff alleges that the ALJ failed to evaluate whether Dr. Saifi's opinion was consistent with the medical records from Dr. Ashraf Hanna, M.D., Plaintiff's pain management physician.[2] The Commissioner responds that the ALJ properly evaluated the opinion evidence.

Before March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c). Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had

---

[2] Outside of reciting the basic legal standard that ALJs must apply in reviewing opinion evidence, Plaintiff's third argument is only four sentences. Plaintiff does not explain how Dr. Hanna's evidence is consistent with Dr. Saifi's opinion. Normally, such an argument would be deemed waived. *See Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). Nonetheless, because the Court prefers to resolve issues on the merits, it addresses the argument.

to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on December 11, 2019 (Tr. 72). As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). *Compare* §§ 404.1527(c), 416.927(c) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Moreover, the Eleventh Circuit has affirmed that these new regulations eliminate the treating physician rule. *Harner v. Comm'r of Soc. Sec.*, 38 F.4d 892, 897 (11th Cir. 2022) (noting that the Commissioner "determined that a change was required due to a shift away from physicians having a personal relationship with claimants and toward claimants consulting multiple doctors and care teams").

The new regulations require an ALJ to apply the same factors when considering opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other

14

evidence of record. *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[3] 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

In April 2022, Dr. Saifi completed a medical source statement in which he opined that Plaintiff could sit, stand, and walk for one hour in an eight-hour workday; could occasionally perform fine manipulation and gross manipulation tasks; could occasionally raise her arms over the shoulder level; could lift up to ten pounds frequently, carry up to five pounds frequently and ten pounds occasionally; could never bend, squat crawl, or climb; was totally restricted from performing activities involving unprotected heights, being around moving machinery, and driving automotive equipment; was moderately

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

restricted from exposure to marked changes in temperature or humidity; and was mildly restricted from exposure to dust, fumes, and gases (Tr. 956–59). Dr. Saifi also opined that Plaintiff was "completely disabled" (*Id.*).

The ALJ said the following regarding Dr. Saifi's opinion:

> This opinion is not persuasive [because] such extreme limitations are not supported by the records of this physician where the claimant repeatedly had normal strength and sensation, or consistent with evidence of record that shows she has received benefit from treatment and would be capable of a limited range of sedentary activities as noted above.

(Tr. 30) (exhibit citations omitted). The ALJ's consideration of Dr. Saifi's opinion tracks the regulation's requirements as she addressed both consistency and supportability.[4] The ALJ's consistency finding is supported by substantial evidence. As discussed in the ALJ's decision, Plaintiff reported experiencing pain relief from her ketamine infusions, her Medrol Dosepak, and the medial branch block treatment (Tr. 28–30, 892, 1086, 1115, 1120). The ALJ also noted that Plaintiff demonstrated adequate performance in physical therapy (Tr. 29, 1087).

Plaintiff argues that the ALJ erred by failing to address the consistency of Dr. Saifi's opinion with the medical evidence from Dr. Hanna. This argument fails. First, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision . . . ." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Moreover, Plaintiff's argument is, in essence, that the ALJ erred because Dr. Saifi's opinion is consistent with Dr. Hanna's treatment notes. Again, Plaintiff misunderstands the scope

---

[4] Thus, Plaintiff's suggestion that the ALJ "never assessed consistency with other records," (Doc. 18 at 10) is without merit.

of this Court's review. The question is not whether there is evidence that would support an alternative consistency finding, or whether there is evidence that is consistent with Dr. Saifi's opinion, but whether the ALJ's consistency finding is supported by substantial evidence.[5] Here, for the reasons explained above, it is.

### V.     Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

   1.  The decision of the Commissioner is affirmed.

   2.  The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on March 22, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

[5] Moreover, as the Commissioner points out, to the extent Dr. Hanna's treatment notes reflect Plaintiff's subjective complaints of pain, the ALJ found those complaints not to be entirely consistent with the medical evidence and other evidence (Tr. 26).